UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| JEROME HARRIS, | ) | |
|---|---|---|
| | ) | Case No. 1:17CV1854 |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |

Plaintiff Jerome Harris ("Harris" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g).

The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Commissioner's final decision is affirmed.

I. PROCEDURAL HISTORY

On July 19, 2014, Harris filed an application for SSI benefits, alleging disability beginning July 15, 2010. (R. 9, Transcript ("Tr.") at 30, 149-152, 165-167,

178-191.) Harris listed his physical or mental conditions that limit his ability to work as: "diabetes, alcoholism, knee problems, migraine headaches; diabetes; mental; alcoholism; physical, legs and hands, sharp pains; high blood pressure." *Id.* at 179. Harris's application was denied initially and upon reconsideration. *Id.* at 81-91, 92-103, 104-106. Thereafter, Harris filed a request for a hearing before an administrative law judge ("ALJ"). *Id.* at 117-118.

The ALJ held the hearing on May 10, 2016. (R. 9, Tr. at 53-80.) Harris appeared at the hearing, was represented by counsel, and testified. (*Id.* at 55, 58-75.) A vocational expert ("VE") also attended the hearing and provided testimony. (*Id.* at 55, 76-79.) On June 8, 2016, the ALJ issued the decision, applying the standard five-step sequential analysis to determine whether Harris was disabled. (R. 9, Tr. at 30-40; *see generally* 20 C.F.R. § 416.920(a).) The ALJ concluded Harris was not disabled. *Id.* at 30, 40. The Appeals Council denied Harris's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (R. 9, Tr. at 1-4.)

Harris seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case. Harris presents the following legal issues for the court's review:

> 1. Whether substantial evidence supports the residual functional capacity assessment as determined by the administrative law judge, in particular manipulative function.
>
> 2. Whether the administrative law judge erred by failing to perform a proper pain analysis.

(R. 14, PageID #: 950.)

## II.  PERSONAL BACKGROUND INFORMATION

Harris was born on \*\*\*, 1964, and was 50 years old, which is defined as an individual closely approaching advanced age, on the application date.  (R. 9, Tr. at 38, 58, 149.)  Harris has a limited education, and is able to communicate in English.  (R. 9, Tr. at 38, 58-59, 178, 180.)  Harris had past work as a roofer, dishwasher, and packer.  (R. 9, Tr. at 60-61, 78, 181.)

## III.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his June 8, 2016, decision:

> 1.  The claimant has not engaged in substantial gainful activity since July 19, 2014, the application date (20 CFR 416.971 *et seq.*).
>
> 2.  The claimant has the following severe impairments: degenerative disc disease of the cervical spine with cord compression and alcohol abuse-related seizure disorder (20 CFR 416.920(c)).
>
> 3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).
>
> 4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined 20 CFR 416.967(b) except never climb ladders, ropes, or scaffolds; never reach overhead bilaterally; must avoid all exposure to hazards, such as unprotected heights, moving machinery, and commercial driving.

3

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on March 13, 1964, and was 50 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 19, 2014, the date the application was filed (20 CFR 416.920(g)).

(R. 9, Tr. at 32-33, 35, 37-39.)

## IV. DISABILITY STANDARD

A claimant is entitled to receive SSI benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 416.905(a).

4

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R. § 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R. § 416.920(a)(4).

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v.*

*Perales,* 402 U.S. 389, 401 (1971). Courts have defined "substantial evidence" as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari,* 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright,* 321 F.3d at 614; *Kirk,* 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright,* 321 F.3d at 614; *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner,* No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston,* 245 F.3d at 535).

VI.  ANALYSIS

A. RFC:  Manipulative Function

Harris contends that substantial evidence does not support the ALJ's residual functional capacity ("RFC") assessment, in particular the lack of manipulative limitations.[1] (R. 14, PageID #: 950, 959-961.)  Harris asserts that substantial evidence provides a basis for both gross and fine manipulative limitations.  *Id.* at 960.

The ALJ has the responsibility for reviewing all the evidence in making the RFC determinations.  20 C.F.R. § 416.927(e)(2).  The ALJ evaluates every medical opinion received in evidence.  20 C.F.R. § 416.927(c).  The ALJ will consider any statements that have been provided by medical sources, whether or not based on formal medical examinations.  20 C.F.R. § 416.945(a)(3).  State agency doctors are considered highly-qualified experts in disability evaluation, and the ALJ must consider their evidence.  20 C.F.R. §§ 416.913a(b)(1); 416.927(e).  Although the ALJ reviews and considers all the evidence in the record, the responsibility for assessing the claimant's residual functional capacity rests with the ALJ.  20 C.F.R. §416.946(c).

A determination of disability requires evidence of more than merely the presence or diagnosis of an impairment; some evidence of the resulting limitation(s) must also be provided.  The mere diagnosis of a condition, for example, does not

---

[1] The RFC's sole manipulative limitation provided that Harris could "never reach overhead bilaterally."  (R. 9, Tr. at 35; *see also id.* at 77, 99.)

establish either the condition's severity or, more importantly, its effect on the claimant's functional limitations. *Kennedy v. Astrue*, No. 06-6582, 2007 WL 2669153, at *6 (6th Cir. Sept. 7, 2007); *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988) (citing cases).

It is the claimant's burden to prove that he is disabled within the meaning of the Act, and to establish that his impairments render him unable to engage in any substantial gainful activity. *Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich. Feb. 27, 2012), *adopted by* 2012 WL 858636 (E.D. Mich. Mar. 14, 2012) (quoting *Jones v. Commissioner,* 336 F.3d 469, 474 (6th Cir. 2003)); 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a). Ultimately, the claimant bears the burden of proving his entitlement to benefits. *Hubbard,* 2012 WL 883612, at *5 (quoting *Boyes v. Secretary,* HHS, 46 F.3d 510, 512 (6th Cir. 1994)).

Harris argues that substantial evidence provides a basis for both gross and fine manipulative limitations, and the ALJ failed to include any such limitations, despite objective evidence and examinations which were consistent with the claimant's allegations. (R. 14, PageID #: 960.) In support, Harris states that he reported as early as June 2014 that he felt weak in his hands, and "had pins and needles sensations in both hands; this sensation continued throughout the record." *Id.* at 961, citing R. 9, Tr. at 257. Harris also states that he had consistent complaints of numbness, tingling, and pain in his hands, as well as arm pain. *Id.* at

8

961, citing MER. He had complaints of his hands "locking up," which was helped at times by therapy. *Id.* at 961; *see also* R. 9, Tr. at 68-70 (hearing testimony). Harris also reported difficulty writing, using a computer, and holding onto objects, at times dropping them. *Id.* at 961; *see also* R. 9, Tr. at 69-70.

The medical evidence of record cited by Harris shows he had consistent complaints of shooting pains, tingling, and numbness in his arms and hands. *See, e.g.*, R. 9, Tr. at 755, 799, 820, 834. At a June 12, 2014, initial visit with Leela Kolluru, M.D., Harris complained of neck and shoulder pain, weakness in both hands, as well as chronic pins and needles in fingers of both hands and toes. *Id.* at 257. Harris also reported a history of alcohol dependence, diabetes mellitus, hypertension, seizures, and chronic bilateral knee pain. *Id.* At that appointment, Harris reported he "drinks around 12 cans of beer a day." *Id.*

An EMG performed on March 17, 2015 revealed "evidence of peripheral polyneuropathy" bilaterally, and "evidence of right ulnar mononeuropathy" at the elbow (cubital tunnel syndrome), but no evidence of carpal tunnel syndrome ("CTS"). (R. 9, Tr. at 776, 860.) On examination on several occasions in the spring and summer of 2015, Harris exhibited motor strength of 5/5 in both arms and hands, but weak grip strength. *Id.* at 799, 820, 834, 884.

In a March 26, 2015, visit to a Physical Medicine and Rehabilitation ("PM&R") clinic, Harris' chief complaint was reported as "neck pain and bilateral knee pain." (R. 9, Tr. at 772-773.) His chief complaint was again recorded as "neck pain and bilateral knee pain" at a subsequent visit to the PM&R clinic on May 27,

2015. *Id.* at 794; *see also id.* at 880 (Sept. 17, 2015, same). The treatment plan for Harris at that time "for improvement of function and decrease in symptoms/pain" was to have a consult for possible "spine surgery for cervical spinal cord compression," and a course of medication, including Elavil (commonly prescribed for depression and anxiety), Gabapentin (for seizure disorders), Tramadol for severe pain, as needed, and capsacin cream (to relieve neuralgia pain). *Id.* at 799. No limitations were placed on Harris' ability to work, nor on his capacity to handle or finger. *Id.*

During a follow-up appointment on June 29, 2015, a prescription for Lyrica was added, and the Gabapentin was discontinued. (R. 9, Tr. at 821.) No limitations were placed on Harris' ability to work, nor on his capacity to handle or finger. *Id.* at 820-821. At a follow-up appointment on July 29, 2015, the treatment plan remained the same, to continue the medications prescribed. *Id.* at 833-834; *see also id.* at 884 (same, Sept. 17, 2015).)

In March 2016, Harris visited a physical therapist to address cervical radiculitis and cervical stenosis of the spine. (R. 9, Tr. at 850.) The therapist noted complaints of neck pain, and bilateral numbness and shooting pains in Harris' hands and arms. *Id.* at 852. The therapist also noted that Harris was independent in his self-care and activities of daily living. *Id.* The PT predicted a good prognosis with a course of physical therapy. *Id.* at 854.

Opinion evidence in the record is limited. Bradley J. Lewis, M.D., an agency medical consultant, reviewed claimant's medical records on September 9, 2014, and

completed a physical RFC assessment. (R. 9, Tr. at 86-88.) The doctor found that claimant had no exertional limitations, but a postural limitation that he could never climb ladders, ropes, or scaffolds, because of a history of seizures. *Id.* at 86-87. Dr. Lewis assessed that Harris had no manipulative limitations. *Id.* at 87.[2]

On reconsideration, William Bolz, M.D., completed a physical RFC assessment on December 3, 2014. (R. 9, Tr. at 97-100.) Dr. Bolz assessed that claimant has the RFC to perform light work, along with a postural limitation that he could never climb ladders, ropes, or scaffolds, because of a history of seizures. *Id.* at 98. Dr. Bolz found that claimant had manipulative limitations, but only limited as to overhead reaching bilaterally, because of degenerative disc disease of the cervical spine. *Id.* at 99. Dr. Bolz assessed that claimant was unlimited as to gross manipulation (handling) and fine manipulation (fingering). *Id.*[3]

The ALJ gave "great weight" to the state agency consultants' physical RFC assessments "because they are generally consistent with the claimant's documented functioning" as found in the record medical evidence. (R. 9, Tr. at 83.)

Harris does not provide any medical opinion that placed any limitations on his capacity to work, or any limitations on his ability to handle or finger. *See generally* R. 14, PageID #: 959-961. Moreover, at the hearing counsel did not ask for

---

[2] The record indicates that "[t]here is no indication that there is opinion evidence from any source." *Id.* at 88.

[3] Again, the record notes that there was no opinion evidence from any source. *Id.* at 100.

11

a hypothetical question based on manipulative limitations. (R. 9, Tr. at 79.) Harris, however, asserts that the evidence and his own testimony prove that he has a significant degree of restriction in handling and fingering. The claimant contends:

> Mr. Harris' nerve conduction study/ electromyogram provided an objective basis for a limitation in handling. The examinations have consistently demonstrat[ed] weak grip strength which again provided a basis for limitations with respect to gross manipulation. Mr. Harris also reported problems with fine manipulation which again the polyneuropathy supported by the objective testing which would provide a basis for limitations in fine manipulations. Moreover, right ulnar neuropathy would result in some arm limitations.

(R. 14, PageID #: 961.) Counsel, however, cannot provide a medical opinion.[4] Harris has not identified any medical opinion which placed limitations on his gross manipulation or fine manipulation, nor does he identify any medical opinion which would support a finding that Harris could not perform any substantial gainful employment by reason of a medically determined limitation on fingering or handling. *See generally* 20 C.F.R. § 416.912(a), (c) (claimant's burden to furnish medical and other evidence).

Dr. Lewis and Dr. Bolz both assessed that Harris was unlimited in gross manipulation and fine manipulation. *See* R. 9, Tr. at 87 (no manipulative limitations), 99 (only manipulative limitation concerned overhead reaching). There was no medical opinion evidence that placed any limitations on claimant's capacity

---

[4] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

to work, or any limitations on his ability to handle or finger. It would have been impermissible for the ALJ to "play doctor" and make his own independent medical findings. *Foss v. Commissioner*, No. 1:16CV1907, 2017 WL 2912524, at *8 (N.D. Ohio June 20, 2017), *adopted by* 2017 WL 2908857 (N.D. Ohio July 7, 2017) (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996), and other cases); *see also McCain v. Dir., Office of Workers Comp. Programs*, No. 01-4074, 2003 WL 932431, at *9 (6th Cir. Mar. 6, 2003) (citing *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985)). The ALJ reasonably relied on the state agency consultants' physical RFC assessments, which are the only opinion evidence found in the medical evidence of record. (R. 9, Tr. at 83.) The court finds that the ALJ's decision on this issue is supported by substantial evidence.

## B. Analysis of Pain

Harris also contends that the ALJ erred by failing to perform a "proper pain analysis." (R. 14, PageID #: 950, 962-964.) He argues that the ALJ's decision does not include a thorough analysis that considered Harris' complaints of pain. (R. 14, PageID #: 964.)

The claimant's statements regarding "pain or other symptoms will not alone establish that [he is] disabled...." *Walters*, 127 F.3d at 531 (quoting 20 C.F.R. § 404.1529(a)). The Sixth Circuit has established a two-part test to evaluate complaints of disabling pain when the pain forms a basis of the claimant's disability claim. *Rogers v. Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007); *see also* SSR 16-

13

3p, 2017 WL 5180304, at \*3-\*4 (Oct. 25, 2017).[5]  First, the ALJ must determine whether there is "an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Id.* (*citing* 20 C.F.R. § 416.929(a)).

If the first test is satisfied, the ALJ must then evaluate "the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Rogers*, 486 F.3d at 247.  Social Security Ruling 16-3p lists the factors relevant to the ALJ's determination at this step.  These factors include: the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain, and, "[a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." SSR 16-3p, 2017 WL 5180304, at \*7-\*8.  Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant's allegations of pain "based on a consideration of the entire case record." *Rogers*, 486 F.3d at 247.

---

[5] Social Security Ruling 16-3p superseded SSR 96-7p, and is to be used by ALJs when making determinations and decisions on or after March 28, 2016. SSR 16-3P, 2017 WL 5180304, at \*1.  The decision here was dated June 8, 2016. (R. 9, Tr. at 40.)

14

Harris states that the ALJ failed to perform either prong of the analysis. (R. 14, PageID #: 962-963.) That is incorrect; regarding the first prong, the ALJ determined that Harris had the severe impairments of degenerative disc disease of the cervical spine with cord compression, and alcohol abuse-related seizure disorder. (R. 9, Tr. at 32.) The ALJ also determined that Harris had non-severe physical impairments of mild degenerative arthritis of both knees, with possible meniscal tear; hypertension; and, diabetes mellitus. *Id.* at 32-33. The decision stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. 9, Tr. at 36.) The court finds that the ALJ properly applied the first prong of the two-part test. *See Rogers*, 486 F.3d at 247; SSR 16-3p.

Harris also contends that the ALJ failed to consider several factors of the second prong of the test. (R. 14, PageID #: 963.) Specifically, Harris asserts that the ALJ did not consider the location, duration, frequency and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; and, the type, dosage, effectiveness, and side effects of any medication. (R. 14, PageID #: 962-963, citing 20 C.F.R. § 404.1529(c)(3); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1040 (6th Cir. 1994).)

15

An ALJ is not required to expressly address all the factors listed in SSR 16-3p, but should sufficiently articulate the assessment of the evidence to assure the court that the ALJ considered all relevant evidence. *Cross v. Commissioner*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) (citing *Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1055 (E.D. Wis. 2005)); *see also Williams v. Astrue*, No. CIV.A.3:07-CV-0965-N, 2008 WL 4490792, at *10 (N.D. Tex. Oct. 3, 2008). Although Harris contends that the ALJ's analysis was limited to his ability to live alone without assistance (R. 14, PageID #: 963), a review of the underlying decision demonstrates that the ALJ's analysis was more thorough than alleged by Harris. The ALJ, for example, discussed the location, frequency, and duration of Harris' pain, particularly those areas which claimant repeatedly characterized in the medical record as his "chief complaints." (R. 9, Tr. at 32 ("bilateral knee pain"), 34 ("mechanical neck pain, severe numbness and tingling in the bilateral upper extremities"); *see generally* R. 9, Tr. at 772-773 (chief complaint reported as "neck pain and bilateral knee pain"), 794 (same), 880 (same); *see also* SSR 16-3p.) The ALJ also discussed the results of Harris' March 17, 2015, EMG. (R. 9, Tr. at 32 ("diagnosed with peripheral neuropathy in bilateral upper extremities, right ulnar mononeuropathy at the elbow consistent with cubital tunnel syndrome), but no evidence of bilateral carpal tunnel syndrome in his hand-wrist joints"); *see generally* R. 9, Tr. at 776, 860.)

Further, the ALJ considered the medications and other treatment that Harris received for his symptoms of pain. (R. 9, Tr. at 32 ("conservative non-narcotic pain relievers" for knee pain; 34 (treatment by pain management specialist

16

included steroid injections, Gabapentin, Lyrica and Elavil, plus physical therapy.) The ALJ stated that the physical therapist's "notes from 2015 indicate that claimant's bilateral knee pain resolved after one session, indicating conservative treatment was helpful for his symptoms." (R. 9, Tr. at 32, citing R. 9, Tr. at 639.) Moreover, the ALJ found that recent notes from the pain management specialist indicated that "claimant was given home exercises to help with his ranges of motion but he has been non-compliant." *Id.* at 34, citing R. 9, Tr. at 772-773. In addition, although physical therapy was helping, Harris stopped attending after three sessions "due to transportation." *Id.* at 34, citing R. 9, Tr. at 630. The ALJ noted that: "No other aggressive form of medical treatment has been prescribed to date for these impairments." *Id.* A treatment regimen consisting mostly of pain medication is inconsistent with a finding of total disability. *See, e.g., [Helm v. Commissioner, No. 10-5025, 2011 WL 13918, at \*4 (6th Cir. Jan. 4, 2011)](#).*

One of the relevant factors considered under SSR 16-3p is the individual's daily activities. SSR 16-3p; *see, e.g.*, *[Walters,](#)* [127 F.3d at 532](#) (ALJ may properly consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain). The ALJ stated that

> The medical evidence suggests that the claimant has had a partially-improved response to conservative treatment modalities because he lives alone without any reported assistance with personal hygiene and other essential activities of daily living, such as household chores and grocery shopping.

(R. 9, Tr. at 36.) Harris argues that the ALJ improperly focused on his ability to live alone without assistance. (R. 14, PageID #: 963.) Harris cites his hearing

17

testimony and contests the ALJ's finding that the he did not require any assistance. (R. 14, PageID #: 964.) Harris did testify that he lives alone. (R. 9, Tr. at 59.) But Harris also testified at the hearing that his girlfriend did grocery shopping, and cooked and cleaned for him. *Id.* at 64-65.

The Commissioner argues that it was reasonable for the ALJ to conclude that, since Harris lived alone, he was able to perform his activities when necessary. (R. 15, PageID #: 983.) Moreover, the Commissioner points out that "the treatment notes continually show that Plaintiff independently performed his self-care and other activities of daily living." *Id.* This court's review must be based on the record as a whole, and the court may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *See Heston,* 245 F.3d at 535 (citing *Walker,* 884 F.2d at 245).

The record shows that, at an October 6, 2011, appointment with Huma Rizvi, M.D., Harris reported that he lived alone, and managed all his activities of daily living without difficulty. (R. 9, Tr. at 315.) At a March 23, 2012, appointment with Dr. Rizvi, Harris reported the same. *Id.* at 309. At a January 17, 2014, appointment with a physical therapist, Harris reported that he lived alone, and was independent with his self-care and his activities of daily living. *Id.* at 268. About six weeks prior to the hearing, during an appointment with another physical therapist on March 30, 2016, Harris reported that he lived alone, he was independent with his self-care and his activities of daily living, although his

18

girlfriend helped with chores and daily activities "if he is having a bad day." *Id.* at 852.

Where the evidence regarding a claimant's activities of daily living is "plausibly contradictory," an ALJ's adverse inference is justified. *Amir v. Commissioner*, No. 17-1134, 2017 WL 4570577, at *6 (6th Cir. Oct. 13, 2017) (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.")); *see generally Masters v. Commissioner*, No. 17-5561, 2017 WL 5508536, at *5 (6th Cir. Nov. 17, 2017) ("The ALJ reasonably noted that despite her symptoms, [claimant] remains able to perform routine, daily tasks that he viewed as inconsistent with her allegations that her pain and symptoms were completely debilitating.").

The ALJ reasonably determined that the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (R. 9, Tr. at 39.) An individual is not required to be pain-free or experiencing no discomfort to be found employable. *Byrd v. Commissioner*, No. 5:12CV0828, 2013 WL 1150138, at *7 (N.D. Ohio Jan. 14, 2013), *adopted by* 2013 WL 1154295 (N.D. Ohio Mar. 19, 2013) (citing *Qantu v. Barnhart*, No. 02-1314, 2003 WL 21921404, at *5 (6th Cir. Aug. 13, 2003). The ALJ addressed Harris' pain by limiting him to a range of light work.

The court finds that substantial evidence in the record supports the ALJ's decision concerning Harris' reported pain and its impact.

## VII.  CONCLUSION

For the foregoing reasons, the court finds that the decision of the Commissioner is supported by substantial evidence.  The record evidence as discussed in the ALJ's decision is such that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination.  The decision of the ALJ is AFFIRMED.

IT IS SO ORDERED.

<u>s/ David A. Ruiz</u>
David A. Ruiz
United States Magistrate Judge

Date:   <u>September 20, 2018</u>